UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL JOSEPH STERHAN,

                Petitioner,

v.                                            Case Number: 07-cv-15229
                                            Honorable Arthur J. Tarnow

THOMAS K. BELL,

                Respondent.

_____/

**OPINION AND ORDER**
**DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS**

**I.  Introduction**

Petitioner Michael Joseph Sterhan, a state inmate currently confined at the Gus Harrison

Correctional Facility in Adrian, Michigan, through counsel, filed this application for writ of

habeas corpus pursuant to 28 U.S.C. § 2254.  On January 30, 2006, Petitioner pleaded no contest

to one count of armed robbery, MICH. COMP. LAWS § 750.81d2, in the Oakland County,

Michigan, circuit court.  He was sentenced as a habitual offender, fourth, MICH. COMP. LAWS §

769.12, to sixteen-years, four-months to fifty years in prison for that conviction.  At the time of

the offense, Petitioner was on parole from a sentence for second-degree home invasion, which

occurred in 2001 in Muskegon County.  His sentence for the second-degree home invasion

conviction was forty-two months to twenty years in prison.  In his application, Petitioner alleges

that (1) the trial court erred in failing to give him credit on his sentence for time served and thus

violated his rights to equal protection, due process, and double jeopardy, and (2) the prosecutor's

statements from the victim, that she suffered psychological injuries, violated his rights under the

Confrontation Clause.  For the reasons stated, the Court denies the petition.

## II.  Procedural History

At the preliminary-examination hearing held on January 4, 2006, the victim, a bank teller, testified that, on December 12, 2005, Petitioner came into the bank and handed her a note, which said "I'll kill you."  (Preliminary Hr'g Tr. 11, Jan. 4, 2006.)  The note also instructed her to empty out her drawer and "not to do anything stupid."  *Id.* at 12.  She testified that subsequently, Petitioner pulled out a gun, and told her to do what he said or he would "[f]ucking blow my head off."  *Id.* at 13.  She said that after she handed over the cash to Petitioner, he left. The victim was the only person who testified at the preliminary-examination hearing.

At the plea hearing, Petitioner admitted the following: (1) that he understood the terms of his no-contest plea to armed robbery and his guilty plea to being a habitual offender, fourth, (2) that his plea was knowing and voluntary, (3) that he understood the sentencing regarding his pleas, (4) that he understood that his sentence could be enhanced because he violated the terms and conditions of his parole, (5) that he understood that he was giving up all his trial rights, which included giving up his rights to have witnesses who would testify against him appear in court and be subject to cross-examination, and (6) that no promises were made to him in exchange for his no-contest plea.  (Plea Hr'g Tr. 5-9, Jan. 30, 2006.)

Subsequently, on February 17, 2006, the trial court sentenced Petitioner as stated above. At the sentencing hearing, the prosecutor, in discussing the minimum guidelines range with the trial court, stated:

> In terms of the offense, the victim's husband that – the cash – the
> teller at the bank is not here.  Her husband is.  He does not wish to speak. The
> reason she is not here is because this has affected her quite dramatically, as she
> indicates to probation.  She's had to obtain counseling due to the incident.  She
> hasn't returned back to work.  She suffers from anxiety attacks, suffers from post
> traumatic stress disorder.

2

That was as a result of the Defendant going into the bank, producing
a hand gun from his coat, pointing it at her and telling her that he would blow her
head off, telling her – or to hand him the money, telling her not to give him any
dye packs, that he – he threatened to shoot her several times.  He walked out of
the bank with in excess – or actually close to 7,000 dollars worth of money.

He held her at gun point and, as a result, she hasn't been able to go
back to work, life isn't normal for her.

(Sentencing Hr'g Tr. 9, Feb. 17, 2006.)

The trial court then proceeded to sentence Petitioner to 196 months to fifty years in

prison, to be served consecutive to his parole violation.

Thereafter, Petitioner filed a delayed application for leave to appeal that decision in the

Michigan Court of Appeals, raising the following claims:

I.      Whether the trial judge erred when he did not give the [Petitioner] credit
        for the 65 days that he served in jail while this case was pending before
        sentence, and whether the failure to give this credit,

        and Michigan case law, violated the equal protection clause of the
        14th Amendment to the United States Constitution.

II.     Whether the trial judge erred in the interpretation and application of the
        sentencing guidelines, and violated the [Petitioner's] constitutional rights
        under the [C]onfrontation [C]lause of the 6th Amendment by assessing 10
        points for OV 4.

On April 6, 2007, the Michigan Court of Appeals denied Petitioner's application. *People*

*v. Sterhan*, No. 276248 (Mich.Ct.App. Apr. 6, 2007).  Petitioner subsequently filed an

application for leave to appeal that decision in the Michigan Supreme Court, raising the same

claims.  On September 10, 2007, the Michigan Supreme Court denied Petitioner's application for

leave to appeal.  *People v. Sterhan*, 480 Mich. 858, 737 N.W.2d 695 (2007) (Kelly, J., would

grant leave to appeal for the reasons given in her dissent in *People v. Conway*, 474 Mich. 1140,

3

716 N.W.2d 554 (2006).).  Petitioner neither filed a writ of certiorari in the United States

Supreme Court nor a post conviction motion in the state courts.

Petitioner filed this habeas petition on December 7, 2007, raising the same claims as

raised in both state-appellate courts.

### III.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to any
claim that was adjudicated on the merits in State court proceedings unless the
adjudication of the claim –

(1)     resulted in a decision that was contrary to, or involved an
        unreasonable application of, clearly established Federal law, as
        determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable
        determination of the facts in light of the evidence presented in the
        State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of state-court

factual determinations.  28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

or if the state court decides a case differently than the Supreme Court has on a set of materially

indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable

application occurs" when "a state-court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case."  *Id.* at 409.  A federal-habeas court may not "issue the

writ simply because that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly.  Rather, that

application must also be unreasonable."  *Id.* at 410-11.

Petitioner must therefore demonstrate that the state appellate court's decision was

contrary to or involved an unreasonable application of existing federal law.

### IV.  Analysis

### A.  Credit time claim

In his first claim, Petitioner contends that the trial court erroneously failed to credit the

jail time he served prior to entering his no-contest plea to armed robbery while on parole.  In

Michigan, a criminal conviction opens a defendant to one possible maximum statutory penalty

that a sentencing court may not exceed.  MICH.COMP.LAWS § 769.8(1). In addition to a

maximum sentence, however, the court must also set a minimum sentence under the sentencing

guidelines.  MICH.COMP.LAWS § 769.34.  After serving the minimum sentence, a prisoner is

turned over to the jurisdiction of the Parole Board. MICH.COMP.LAWS § 791.234(1).  Thereafter,

the amount of time a prisoner serves beyond the minimum sentence is determined by the Parole

Board, but may not exceed the prisoner's maximum sentence.  Thus, even completely serving the

minimum sentence does not guarantee a prisoner release prior to serving the statutory maximum

sentence authorized by the conviction.

Under  MICH.COMP.LAWS § 791.238(1), a prisoner on parole remains in the legal custody

and under the control of the Department of Corrections.  Furthermore, under MICH.COMP.LAWS

§ 798.238(2), a prisoner who violates the terms of parole is liable "to serve out the unexpired

portion of his or her maximum imprisonment.  The time from the date of the declared violation

to the date of the prisoner's availability for return to an institution shall not be counted as time

served."  When a prisoner commits a new felony while on parole, "the sentence for the instant

offense must be consecutive to the sentence for which he was on parole."  *People v. Watts*, 186

Mich.App. 686, 687-88, 464 N.W.2d 715, 716 (1991).  Citing MICH.COMP.LAWS § 768.7a(2),

the *Watts* Court stated:

> If a person is convicted and sentenced to a term of imprisonment for
> a felony committed while the person was on parole from a sentence for a previous
> offense, *the term of imprisonment imposed for the later offense*
> *shall begin to run at the expiration of the remaining portion of the term of*
> *imprisonment imposed for the previous offense*. [Emphasis added.]

*Watts*, 186 Mich.App. at 688, 464 N.W.2d at 716.  Furthermore, the *Watts* court acknowledged

that, "a defendant who has received a consecutive sentence is not entitled to credit against the

subsequent sentence for time served.  Rather, any credit for time served should be applied

against the first sentence."  *Id.* at 687.

Here, Petitioner committed armed robbery while on parole from his 2001 sentence for

home invasion.  He was sentenced as a habitual offender, fourth, to a minimum of 196 months to

a maximum of fifty years for the armed robbery, to be served consecutive to the original

home-invasion sentence.  Petitioner claims the time he spent in jail prior to entering his plea

must be credited to his armed-robbery sentence because he had already completed his minimum

sentence for home invasion when he was paroled.

However, Petitioner cannot ignore his liability for the entire remaining portion of his

home-invasion sentence, and he is not entitled to continued parole from that sentence.  As

discussed above, serving the minimum sentence does not entitle Petitioner to release, it simply

makes him eligible for parole.  When Petitioner violated parole by committing armed robbery, he

was liable for the remainder of his twenty-year sentence for home invasion, regardless of where

he was being held.

The crux of Petitioner's argument is based on a perceived error of state law, which fails

to state a claim on which habeas relief may be granted.  *Pulley v. Harris*, 465 U.S. 37, 41 (1984);

*Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000).  In fact, "the actual computation of [a

petitioner's] prison term involves a matter of state law that is not cognizable under 28 U.S.C. §

2254."  *Kipen v. Renico*, 65 F.App'x. 958, 959 (6th Cir. 2003) (citing *Estelle v. McGuire*, 502

U.S. 62, 68 (1991).).  Federal courts may grant the writ of habeas corpus only on the ground that

the petitioner is "in custody in violation of the Constitution or laws or treaties of the United

States."  28 U.S.C. § 2254(a).  A prisoner has no right under the federal constitution to earn or

receive sentencing credits. *See Moore v. Hofbauer,* 144 F.Supp. 2d 877, 882 (E.D. Mich. 2001)

(*citing Hansard v. Barrett,* 980 F. 2d 1059, 1062 (6th Cir. 1992)).

Additionally, in an unpublished case from this district, *Reaves v Hofbauer*, No. 05-cv-

73821, 2006 WL 2365131, at *3-4 (E.D. Mich. Aug. 14, 2006), Judge Steeh explained that when

a prisoner violates parole, consecutive sentencing is not unjust so long as the prisoner is not held

beyond the combined maximum sentences for the existing and new offenses:

> Petitioner violated the terms of parole while he was serving his fourteen-month
> parole term for the 1985 sentences.  The sentence for an offense committed while
> a person is on parole begins "to run at the expiration of the remaining portion of
> the term of imprisonment imposed for the previous offense."  Section 768.7a
> "does not require the termination of any earlier sentences . . . . "  "Although the
> Parole Board *may* terminate an earlier sentence after the prisoner has completed
> its minimum term, doing so is not mandatory, either as a statutory matter or as a
> practical matter."
>
> Furthermore, the maximum terms of consecutive sentences are added
> together to compute a new maximum term. * * *

7

Petitioner's 1985 ten-year maximum sentence for receiving and
concealing stolen property had not fully expired when Petitioner committed
criminal sexual conduct.  Because he did not complete parole satisfactorily, state
officials were entitled to add his maximum sentence for criminal sexual conduct
to his maximum sentence for receiving and concealing stolen property.  The new
maximum term of twenty-five years has not expired, and the Parole Board's grant
of parole in 1988 did not necessarily entail termination of Petitioner's 1985
sentences.  Petitioner has not been unjustly punished or unfairly confined,
because he is not incarcerated beyond his combined maximum sentence.

*Id.* (citations omitted.)

This case is similar to the *Reaves* case.  First, as in that case, Petitioner, here, is

attempting to federalize his challenge to state law.  Second, Petitioner argues that consecutive

sentencing for offenses committed while on parole violates equal protection, because prisoners

could be held for different lengths of time depending on how soon they are tried or enter a plea

on the new offense.  However, prisoners are not a suspect class, *Wilson v. Yaklich*, 148 F.3d 596,

604 (6th Cir. 1998), and there is no constitutional right to parole, *Board of Pardons v. Allen*, 482

U.S. 369, 373 (1987).  Furthermore, whether subtracted from his original sentence or the new

sentence, Petitioner is subject to the same combined maximum penalty authorized by his

convictions.

The Court concludes that Petitioner is not entitled to habeas relief regarding this claim.

### B.  Confrontation Clause claim

In his second claim, Petitioner argues that the trial court, in considering the prosecutor's

statements made during his sentencing, which were statements made by the victim during the

preliminary examination hearing, violated his right to confront the witness against him.

Here, during sentencing, the prosecution noted Petitioner "has five prior felonies, 14

prior misdemeanors, and three juvenile adjudications."  (Sentencing Hr'g Tr. 8, Feb. 17, 2006.)

8

The prosecution then went on to describe the effect Petitioner's actions had on his victim. *Id.* at

9. However, there was no objection to the prosecutor's comments. Rather, defense counsel

attempted to mitigate the impact Petitioner's actions had by noting that he used a toy gun, that

the victim was able to get his license plate, and that the victim appeared calm during the

preliminary examination. It appears that counsel did not object to the scoring of Offense

Variable 4, perhaps because Petitioner was sentenced pursuant to a *Cobbs*[1] agreement. That is,

he knew his likely sentence at the time of the plea.

Moreover, Petitioner's challenge, the scoring of ten points for Offense Variable 4, serious

psychological injury to a victim, is not cognizable on federal habeas review as it is a state law

claim; Petitioner's claim is a state law claim. *Cook v. Stegall*, 56 F.supp.2d 788, 797 (E.D.

Mich. 1999).

Petitioner also attempts to federalize this claim by arguing that consideration of his

victim's trauma violated his right to confront witnesses against him. The Sixth Circuit

explained, in *United States v. Silverman*, 976 F.2d 1502 (6th Cir. 1992), that there is no

constitutional right to trial-like procedures at sentencing:

> Defendants argue that a criminal defendant is entitled to trial-like
> procedural protections at sentencing in order to challenge the accuracy of
> presentence reports or other information developed for the edification of the
> sentencing judge. This argument appears to be predicated upon a theory that all
> things relative to sentencing have completely changed under the guideline
> procedures. While a number of considerations have changed, we are of the view
> that the permissible methods of informing the sentencing judge and the need for
> information in fashioning sentences in light of the constitutional rights of
> defendants at sentencing have not essentially changed. The standard has always
> been that a sentence may not properly be imposed on the basis of material
> misinformation [], but specific

---

[1]*People v. Cobbs*, 443 Mich. 276, 505 N.W.2d 208 (Mich. 1993).

procedures, such as are required at trial, are simply not constitutionally mandated, especially when a guilty plea is entered.

        In *Williams v New York*, [], the Supreme Court considered the proper application of the rules of evidence to sentencing procedures.  The Court upheld New York law which allowed a judge to consider evidence obtained from outside the courtroom without confrontation or cross-examination in exercising the judge's discretion to impose the death penalty.  The Court considered the appellant's due process claim and the effect of the policy that "no person shall be tried and convicted of an offense unless he is given reasonable notice of the charges against him and is afforded an opportunity to examine adverse witnesses."  The court rejected the appellant's request for trial-like procedural protections on both historical and practical grounds.

*Silverman*, 976 F.2d at 1507-08.

Moreover, the victim was subject to cross-examination when she testified at preliminary examination.  And contrary to defense counsel's attempt to mitigate during sentencing, the victim testified that Petitioner pointed the weapon "right at her," repeatedly threatening to "fucking blow [her] head off."  (Preliminary Hr'g Tr. 13, Jan. 4, 2006.)  Thus, confrontation was satisfied.

### V.  Conclusion

For the reasons stated above, this Court concludes that Petitioner is not entitled to federal-habeas relief on the claims presented in his petition.

Accordingly, **IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.

                                           S/Arthur J. Tarnow
                                           Arthur J. Tarnow
Dated:  November 10, 2009           United States District Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 10, 2009, by electronic and/or ordinary mail.

                                         S/Catherine A. Pickles
                                         Judicial Secretary